UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| OSCAR DOWNS, JR., *et al.*, | ) )  ) |
| Plaintiffs, | ) ) Civil No. 3:18-cv-00068-GFVT-EBA |
| V. | ) ) |
| KENTUCKY STATE UNIVERSITY, and RAYLA SMOOT, | ) ) **MEMORANDUM OPINION** ) **&** ) **ORDER** |
| Defendants. | ) ) ) ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendants Kentucky State University and Rayla Smoot's Motion for Summary Judgment. [R. 30.] Plaintiffs Oscar Downs, Jr. and Oscar Downs, III filed suit against Kentucky State University (KSU) and the now-former Director of Human Resources for KSU, Rayla Smoot, after Plaintiffs were terminated from their respective positions at KSU. Plaintiffs seek both equitable and monetary relief against Defendants, alleging (1) breach of contract; (2) wrongful termination; and (3) Fourteenth Amendment violations under 42 U.S.C. § 1983. Defendants now move for summary judgment on various bases. For the reasons stated below, the Court **GRANTS** the Defendants' motion as to the Plaintiffs' § 1983 claims and **REMANDS** the Plaintiffs' remaining state law breach of contract and wrongful termination claims for further consideration by the state court.

**I**

Leading up to the events at issue, Plaintiffs Oscar Downs, Jr. and Oscar Downs, III were both full-time employees at KSU—Downs, Jr. since 1979 and Downs, III since September 2016.

[R. 1-1 at 4.] However, on November 6, 2017, both were terminated from their respective positions.[1] *Id.* at 2. In a letter signed by Ms. Smoot, KSU informed each of the Plaintiffs that the terminations were based upon an "on-going compliance review" and were effective immediately. [*See* R. 30–17; R. 30–18.] Defendants claim that, at this time, Plaintiffs were informed the specific reason for their dismissals was violation of the University's nepotism policy, and Defendants continue to maintain this was the reason for the terminations. [R. 30 at 5–6.] Plaintiffs, on the other hand, claim that Defendants have been equivocal as to the reason for the terminations, that the nepotism explanation is simply pretextual, and the true reasons for the termination were "mere accusations of sexual harassment" by a student-athlete against Plaintiffs and Plaintiffs' participation in the related Title IX investigation. [*See, e,g.*, R. 33 at 16, 22.]

That same November, shortly following termination, Plaintiffs sought to appeal the termination decisions and requested a hearing from KSU. [R. 30-19.] KSU denied these requests, stating that, "[a]s at-will employees," Plaintiffs did not have a "right of appeal as it relates to Kentucky State University's decision to separate them from KSU." [R. 30-20.] This, however, was not the end of the matter. In June 2018, KSU returned its final decision concerning the separate Title IX investigation into Plaintiffs' conduct, finding there was insufficient evidence to find that either had violated KSU's Title IX policy. [R. 30-23.] Following this decision, Plaintiff Downs, Jr. sought reinstatement at KSU. However, KSU declined to reinstate him in his former position and the two parties could not reach an agreement as to alternative employment at KSU. [*See* R. 1-1 at 2; R. 30-1 at 39–43.] Thereafter, on November 5, 2018, Plaintiffs sued KSU and Ms. Smoot. [R. 1-1.] The action was originally

---

[1] Notably, Defendants state that Plaintiffs were at-will employees at the time of termination and Plaintiffs do not dispute this status. [R. 30 at 9; R. 33 at 17.]

2

brought in Franklin Circuit Court in Franklin County, Kentucky and then properly removed to this Court. [R. 1; R. 1-1 at 1]

The claims, brought against each Defendant, include state-law breach of contract, 42 U.S.C. § 1983 claims based on alleged Fourteenth Amendment violations and, construed liberally, a state-law claim for wrongful termination. [R. 1-1 at ¶¶ 11–17.] Based on these claims, Plaintiffs seek equitable relief in the form of reinstatement at KSU, in addition to monetary relief in the form of compensatory and punitive damages. *Id.*

## II

### A

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this

burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Here, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id*.

## B

Defendants are in federal court by way of Plaintiffs' Fourteenth Amendment claims, brought under 42 U.S.C. § 1983. [R. 1-2.] These claims, as against both KSU and Ms. Smoot, will be analyzed separately. The Court will first address KSU's contention that the § 1983 claim against it is barred by the Eleventh Amendment. [R. 30 at 19; R. 34 at 2.]

The Eleventh Amendment generally protects states from suit in federal court. U.S. Const. amend. XI; *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996). This Eleventh Amendment protection "is far-reaching and bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments . . .." *Lanier v. Kentucky Com'n on Human Rights,* 2007 WL 2407274, at *2 (W.D. Ky. Aug. 20, 2007) (citing *Pennhurst*

*State School & Hospital v. Halderman,* 465 U.S. 89, 100–01 (1984). Only where Congress has explicitly abrogated a state's immunity to suit by statute, or where the state itself has consented to suit, will a federal court have jurisdiction over a state defendant. *See Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242 (1985); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). Further, courts have consistently held that Kentucky's public universities are state agencies and are protected under the Eleventh Amendment. *See Bleid Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 976 F. Supp. 2d 911, 914 (E.D. Ky. 2013); *Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993) (holding that the University of Kentucky is an "arm of the state under state law . . ..").

Plaintiffs have not responded in any substantive way to Defendants' contention that their § 1983 claims against KSU are barred by the Eleventh Amendment.[2] Nevertheless, the Court has fully analyzed the issue. As an initial matter, KSU is in fact an agency of the state under Kentucky law.[3] Thus, unless (1) Congress has explicitly abrogated by statute the state's immunity to suit in this context or (2) the state itself has consented to suit, Plaintiffs' claims against KSU are barred by Eleventh Amendment immunity. As noted, Plaintiffs have failed to brief this issue and the Court has no reason to believe either exception to the application of Eleventh Amendment immunity is present in this context. Indeed, in *Hutsell*, the Sixth Circuit, failing to find any such Congressional abrogation of immunity or consent by the state, held that the University of Kentucky was protected by the Eleventh Amendment and dismissed a § 1983 action against the university. 5 F.3d at 999–1003. KSU is entitled to immunity under the

---

[2] Instead, Plaintiffs devote their entire response to the motion for summary judgment to the factual disputes underlying the terminations that brought about this lawsuit. [*See* R. 33.]

[3] Ky. Rev. Stat. Ann. § 164.290 ("Kentucky State University located at Frankfort, Kentucky, is a land-grant state institution and, as such, all the provisions of KRS Chapter 164 shall likewise apply to Kentucky State University.").

5

Eleventh Amendment and Defendants' motion as to Plaintiffs' § 1983 claim against KSU must be granted.

C

The Court now turns to Plaintiffs' § 1983 claim against Ms. Smoot, the only remaining federal law claim. It is unclear from Plaintiffs' Complaint whether this claim is against Ms. Smoot in her official or individual capacity. [*See* R. 1-1 at ¶¶ 16–17.] To the extent Plaintiffs seek to impose liability against Ms. Smoot in her official capacities, she is immune from suit, as the liability imposed, in reality, is on the entity she represents, not the individual. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985); *Hutsell*, 5 F.3d at 1002. Even if the Court construes Plaintiffs' § 1983 claim as being against Ms. Smoot in her individual capacity, she is entitled to qualified immunity and the claim still fails.

Ms. Smoot asserts the defense of qualified immunity. [R. 30 at 23.] Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[W]hether qualified immunity attaches to an official's actions is a purely legal question for the trial judge to determine prior to trial." *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988). Two questions are asked to determine whether an official is entitled to qualified immunity: (1) "Taken in the light most favorable to the party asserting injury, do the facts alleged show the officer's conduct violated a constitutional right?" and (2) was the right "clearly established . . . in light of the specific context of the case[?]" *Crosby v. University of Kentucky*, 863 F.3d 545, 552 (6th Cir. 2017) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Finally, once a defendant raises the qualified immunity defense, "the burden shifts to the plaintiff, who

must demonstrate both that the official violated a constitutional or statutory right, and that the right was so clearly established at the time of the alleged violation 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *Thomas v. Plummer*, 489 F. App'x 116, 119 (6th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

As noted, the first step of the qualified immunity analysis is to determine whether, taken in the light most favorable to the party asserting injury, the facts alleged show the officer's conduct violated a constitutional right. See *Crosby*, 863 F.3d at 552 (citing *Saucier v. Katz*, 533 U.S. at 201). Plaintiffs appear to allege that their terminations and the events that followed violated their constitutional rights in three ways: (1) they were denied their right to due process; (2) the decisions to terminate constituted a violation of equal protection as it was made for discriminatory reasons, namely Plaintiffs' gender; and (3) Plaintiffs were terminated due to their participation in the Title IX investigation. [R. 1-1; R. 33 at 18.] Taking each contention in turn, even when viewed in the light most favorable to the Plaintiffs, the facts alleged do not show a constitutional rights violation.

### 1

The Fourteenth Amendment prohibits states from depriving any person of life, liberty, or property without due process of law. A public employee is entitled to procedural due process—including the opportunity for a hearing—and substantive due process protections if he stands to lose a constitutionally protected property or liberty interest. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). Such a property interest arises from a "legitimate claim of entitlement" to continuing employment. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Thus, in order to establish due process protection, a "plaintiff must, as a threshold matter, establish that he had a protected property interest in his continued employment entitling him to

due process protection." *Blazy v. Jefferson Cty. Reg'l Planning Comm'n*, 438 F. App'x 408, 411–12 (6th Cir. 2011) (citations omitted).

Analysis of state law determines whether an employee possesses a property interest in continued employment. *See Roth*, 408 U.S. at 578 ("[Property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlements to those benefits.") Moreover, a "property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances." *Singfield v. Akron Metro. Hous. Auth.,* 389 F.3d 555, 565 (6th Cir.2004) (citations omitted). In this case, the Court must look to Kentucky law and to the terms of the Plaintiffs' employment to determine whether either had a "legitimate expectation of continued employment." *Johnston–Taylor v. Gannon,* 907 F.2d 1577, 1581 (6th Cir. 1990).

It is clear Plaintiffs were at-will employees at the time of termination and Plaintiffs effectively admit as much. [R. 30 at 9; R. 33 at 17.] KSU's Human Resources Policy Manual reinforces this understanding [R. 30-16] and Plaintiffs have not provided proof of any contract for either Mr. Down, Jr. or Mr. Downs, III providing otherwise. Kentucky law is clear that, where employment is at-will, there is no related property interest. *Travis v. Minton*, No. 2012-SC-000472-OA, 2013 WL 4620532, at *2 (Ky. Aug. 29, 2013). Accordingly, Plaintiffs "lacked a property interest in employment" and "therefore [are] not entitled to relief under § 1983 for a deprivation of procedural due process." *Blazy*, 438 F. App'x at 415. Due to Plaintiffs' failure to establish violation of a constitutional right, Ms. Smoot is entitled to qualified immunity as to the due process portion of the claim.

**2**

Similarly, the facts alleged, or lack thereof, in support of Plaintiffs' allegations that their equal protection rights were violated fail to show that Ms. Smoot's conduct violated a constitutional right. As an initial matter, Plaintiffs cite practically no evidence in support of their bare assertion that they were discriminated against on the basis of their sex, and the evidence in the record related to this assertion amounts to nothing more than conjecture. [*See* R. 30-1 at 11.] Moreover, Plaintiffs argue that "if there is a dispute as to the reason for termination of the Plaintiffs' employment with KSU, how can this Court rule out [that] their said terminations were not discriminatory or otherwise illegal." [R. 33 at 18.] Acknowledging generally that there is a dispute concerning the reason for termination, it is not for the Court to "rule out" any potential discrimination where the Plaintiffs fail to "direct the court's attention to those specific portions of the record" that support Plaintiffs' allegations of discrimination. *In re Morris*, 260 F.3d at 655. Due to the lack of any specific evidence concerning the alleged discrimination on the basis of sex and, thus, the failure to establish violation of a constitutional right, Ms. Smoot is also entitled to qualified immunity as to this portion of the Plaintiffs' § 1983 claim.

**3**

Lastly, this brings the qualified immunity analysis to Plaintiffs' contention that "the firing of the Plaintiffs [was] in violation of their clearly established rights as participants under Title IX." [R. 33 at 18.] It is necessary to note that Plaintiffs' only cause of action related to the preceding contention is the § 1983 claim, as no cause of action has been asserted under Title IX. [*See* R. 1-1.] Thus, construed liberally, Plaintiffs appear to argue that Plaintiffs' Fourteenth Amendment rights were violated because they were terminated while participating in a Title IX investigation. This theory fails to establish a constitutional violation for the following two

reasons.

First, Plaintiffs have provided little to no evidence to support the allegation that they were fired merely for participating in a Title IX investigation or that Title IX violations occurred in the first place. Indeed, the thrust of Plaintiffs' claims is that the nepotism policy was pretext for terminations that in fact were "based on mere accusations of sexual harassment" [R. 33 at 18], not that it served as pretext for terminations that actually occurred due to Plaintiffs' participation in the related Title IX investigation.

Second, Plaintiffs have not provided any authority to support the theory that a violation of Title IX rights is enough by itself to establish a constitutional violation.[4] *See Trautvetter v. Quick*, 916 F.2d 1140, 1148 (7th Cir. 1990) ("[Section] 1983 provides a remedy for deprivations of *specific* constitutional rights, not generalized allegations of constitutional deprivations."). Generally, it is true that plaintiffs may bring both a Title IX and a § 1983 claim against the same defendant. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258 (2009) ("[W]e conclude that Title IX was not meant to be . . . a substitute for § 1983 suits as a means of enforcing constitutional rights."). At the same time, however, even where a particular defendant may be "subject to both Title IX and the Equal Protection Clause, the standards for establishing liability may not be wholly congruent." *Id.* As such, a dubious claim that Plaintiffs' rights under Title IX were violated is, alone, not enough to establish a Fourteenth Amendment violation. As to this third and final portion of Plaintiffs' § 1983 claim, Ms. Smoot is also entitled to qualified immunity.

Even viewed the light most favorable to the Plaintiffs, the facts alleged fail to show any conduct on behalf of Ms. Smoot that violated a constitutional right. See *Crosby*, 863 F.3d at 552

---

[4] It is important to clarify that Plaintiffs' § 1983 claim is based entirely on alleged constitutional violations, not violations of any federal statute. [*See* R. 1-1 at ¶ 16–17.]

(citing *Saucier v. Katz*, 533 U.S. at 201). It is therefore unnecessary to proceed past the first step of the qualified immunity analysis. Ms. Smoot is entitled to qualified immunity as it concerns Plaintiffs' § 1983 claims against her in her individual capacity.

**D**

Federal courts are courts of limited jurisdiction. In order to hear a suit, the Court must have subject-matter jurisdiction over it. *See, e.g., Thornton v. Southwest Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990) (explaining a "federal court lacks authority to hear a case without subject matter jurisdiction"). The Plaintiffs' § 1983 claims were removable to this Court because the claims arose under federal law. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The remainder of Plaintiffs' claims, the breach of contract claim and wrongful termination claim, are based on Kentucky law. They are not federal questions but were removed to this Court on the basis of supplemental jurisdiction. *See* 28 U.S.C. § 1367 ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Without the § 1983 claims there is no longer a basis for supplemental jurisdiction over these state law claims.

Having already dismissed the claims arising under federal law, this Court has "broad discretion" in deciding whether to exercise supplemental jurisdiction over the remaining state law claims. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (citing *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)). It is well established that, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to

dismissing the state law claims, or remanding them to state court if the action was removed." *Gamel*, 625 F.3d at 952 (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.,* 89 F.3d 1244, 1254–1255 (6th Cir. 1996)). Having weighed the relevant factors, while bearing in mind the broader interest in "avoiding needless state law decisions," this Court declines to exercise supplemental jurisdiction over the remaining state law claims. *Province v. Cleveland Press Pub. Co.*, 787 F.2d 1047, 1055 (6th Cir. 1986). Accordingly, the Plaintiffs' claims for breach of contract and wrongful termination in Count One of the Complaint are properly remanded.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendants' Motion for Summary Judgement **[R. 30]** is **GRANTED** as to Count Two of the Plaintiffs' Complaint;

2. Count Two of Plaintiffs' Complaint regarding Fourteenth Amendment violations, brought under § 1983, is **DISMISSED WITH PREJUDICE**;

3. Count One of Plaintiffs' Complaint regarding state law claims is **REMANDED** for further consideration by the state court; and

4. This case is **STRICKEN** from the Court's active docket.

This the 17th day of January 2020.

Gregory F. Van Tatenhove
United States District Judge